UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| MARVIN TILLEY, | ) | |
|---|---|---|
| Claimant, | ) ) ) | |
| v. | ) ) | Case No. CV609-018 |
| MICHAEL J. ASTRUE, *Commissioner of Social Security*, | ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Claimant Marvin Tilley appeals the Social Security Commissioner's denial of his application for disability insurance benefits. (Doc. 1.) For the reasons set forth below, the Commissioner's decision denying benefits should be **AFFIRMED**.

I. BACKGROUND

Tilly, a 54-year-old former well digger and construction worker, seeks social security disability benefits due to breathing problems associated with chronic obstructive pulmonary disease ("COPD") brought on by years of tobacco abuse. (Tr. 61-68, 89.) He filed his

application for benefits on January 17, 2006, alleging that he became disabled on June 1, 2003. (Tr. 61.) His claims were denied initially and on reconsideration. (Tr. 57-60, 50-53.) Thereafter, he requested a hearing before an Administrative Law Judge ("ALJ"), and that hearing was held on August 13, 2008. (Tr. 415-34.) The ALJ entered an order denying Tilley's benefits applications (tr. 25), and the Appeals Counsel denied Tilley's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-5.) Tilley then filed a complaint in this Court contending that the ALJ erred in reaching his decision.

## II. STANDARD OF REVIEW

Affirmance of the ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159; *Lewis v. Astrue*, 2009 WL 464264 at *2 (M.D. Fla. Feb. 24, 2009) (unpublished). The substitution of this Court's judgment for that of the Commissioner is not allowed. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether claimant has met his burden of proof, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, he must demonstrate a severe impairment or combination of impairments. *Id.* Then, at step three, if the claimant's

impairment meets or equals a listed impairment, he is automatically found disabled. *Id.* If not, he must advance to step four, which requires him to prove an inability to perform past relevant work. *Id.* If he cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.*

## III. ANALYSIS

### A.  The ALJ's Determination

At step one of the five-step analysis, the ALJ found that Tilley had not engaged in substantial gainful activity since his January 17, 2006 application date. (Tr. 14.) At step two, he found that claimant's sole severe medical impairment is COPD, related to cigarette smoking.[1] (*Id.*) Tilley's cervical scoliosis and related degenerative

---

[1] As will be discussed at length, *infra*, the ALJ refused to permit claimant a consultative psychological examination since there was no allegation of a mental impairment, claimant engaged in substantial gainful activity for several years, claimant admitted at the hearing that he could read enough to get by, claimant reported in writing that he could read and understand English, and claimant reported that he completed up to the seventh grade in regular education classes. (Tr. 12.)

4

changes are nonsevere, as they do not significantly limit his ability to do basic work activities -- Tilley retains a full range of motion with no noted neurological defects. (Tr. 14-15.) At step three, the ALJ determined that Tilley does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (Tr. 15.) Since he found that Tilley does not meet or equal the COPD listing criteria, the ALJ proceeded to determine his residual functional capacity and whether he retains the ability to perform his past relevant work or other work that is available in the national economy, as required by steps four and five.

The ALJ, after considering all evidence of record, including the opinions of Tilley's treating physicians and the opinions of the non-examining medical consultative specialists for Georgia Disability Determination Services, determined that Tilley "has the residual functional capacity to perform medium work with the following limitations: he can climb stairs, ramps, ladders, scaffolds and ropes only occasionally; and he must avoid concentrated exposure to chemicals, dust and fumes." (*Id.*) Claimant's pain allegations, to the

5

extent that they could reasonably be expected to cause the symptoms claimant alleged, were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 16.) Applying Tilley's residual functional capacity at step four, the ALJ determined that Tilley cannot return to his past relevant work, which requires very heavy exertion. (Tr. 17.) After considering the evidence of record, however, the ALJ concluded that jobs "exist in significant numbers in the national economy that the claimant can perform," including hand packager, presser, assembler, small products assembler, and laundry worker.[2] (Tr. 17-18.) Accordingly, he found that Tilley is not disabled. (Tr. 18-19.)

B.  **Tilley's Claims**

Tilley contends that the ALJ erred by (1) ignoring the opinion of claimant's treating physician, Dr. Mendez, and (2) refusing to order a consultative psychological evaluation. (Doc. 13 at 1.)

---

[2] The vocational expert withdrew laundry worker and presser when the ALJ added the requirement to his hypothetical that the working environment should be air conditioned. (Tr. 431.) But even under that hypothetical, Tilley retained the capacity to perform the assembly and packaging jobs.

### 1. *Dr. Mendez*

"Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians' [opinions] are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2) & (5)). Here, there is no dispute that Dr. Mendez was a treating and examining physician. An ALJ, however, may accord more or less weight to a such a source if there is good cause to do so. *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

Tilley contends that the ALJ discounted the testimony of Dr. Mendez, his primary treating physician.[3] (Doc. 13 at 4.) Tilley argues that the ALJ entirely failed to address Mendez's opinion, which he summarizes as follows:

---

[3] The Commissioner disputes this characterization, arguing that while Dr. Mendez was a treating physician, he was not a "primary" treating physician. (Doc. 16 at 8.) The designation is ultimately irrelevant, as the Commissioner concedes that Dr. Mendez was a treating and examining physician.

7

> On November 27, 2006, Dr. Mendez opined that Plaintiff was totally disabled from August 23, 2006 forward and equaled listings under chronic pulmonary insufficiency as he had an oxygen saturation of only 94-05% pending an arterial blood gas that was to be done for a home oxygen tank. (Tr. 191-192). He opined that this was due to his severe impairments as found by the ALJ especially including COPD -- progressively worsening shortness of breath, a history of spinal meningitis, gastro-esophageal reflux and a GI bleed. *Id.* Dr. Mendez further noted that Plaintiff will get short of breath with exertional activities and was being evaluated for home oxygen. . . . However, the ALJ failed to mention the opinion of treating physician Dr. Mendez at all in his opinion.

(Doc. 13 at 4-5.) Tilley mischaracterizes the record. Dr. Mendez stated that she *believed* that Tilley met the step-three listing for Chronic Pulmonary Insufficiency, but she admitted that Tilley's one-second Forced Expiratory Volume ("$FEV_1$"), a key indicator under the listing, was unknown.[4] (Tr. 191.) Depending upon a person's height, Listing 3.02 requires a *maximum* $FEV_1$ of 1.65. The ALJ, looking elsewhere in the record, noted that Tilley's $FEV_1$ was much too high to meet the listing. Indeed, the records show that as of March 31, 2006, Tilley's $FEV_1$ was 3.15. (Tr. 156.) And in 2003, testers found Tilley

---

[4] Mendez stated also stated that "patient has disability of Respiratory Insufficiency and may require home oxygen." (Tr. 192.) This statement is undercut by the medical evidence of record. Moreover, a neutral reading of the statement does not show any belief on Mendez's part that Tilley is totally disabled, only that he suffered from "a" disability.

8

had an FEV$_1$ of 2.72, still in excess of the maximum allowed under the listing. (Tr. 184.) Hence, Dr. Mendez's assertion that Tilley met or exceeded the listing criteria was entirely unsupported by the medical evidence of record.

And while it would have been better for the ALJ to explicitly address Dr. Mendez's opinion, it is not necessary that he name every piece of evidence. "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (citations omitted); *Randolph v. Astrue*, 291 F. App'x 979, 982 (11th Cir. 2008) ("'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.' *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1557 (11th Cir. 1995))."); *Dyer v. Astrue*, 2009 WL 350637 at *13 (E.D. Mo. Feb. 10, 2009). What the ALJ must do is adequately articulate his assessment of the evidence to insure that he considered the evidence and to provide a path for his reasoning. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam). Here, the ALJ considered "the entire record" in making his findings. (Tr. 14.) Moreover, he determined that Tilley "fails to meet

9

or equal the criteria of Listing 3.02 (Chronic Pulmonary Insufficiency) as he does not have an $FEV_1$ equal to or less than the values specified in table I in that listing." (Tr. 15.) Hence, good cause existed for rejecting Mendez's conclusion, since the medical evidence of record supported a contrary finding. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (good cause for rejecting a treating physician's findings exists when his opinion was not bolstered by the evidence or the evidence supported a contrary finding).[5]

## 2. *Consultative Examinations*

Tilley next contends that the ALJ erred by denying his request for a formal psychological examination based upon his minimal education and literacy.[6] (Doc. 13 at 7.) Based upon his lack of literacy and poor scholastic ability, Tilley argues that the ALJ should have granted his request, since such factors are relevant to the jobs he can

---

[5] The Court notes that any error here was, at most, harmless. *See Cooper v. Astrue*, 2010 WL 1511389 at *1 (11th Cir. Apr. 16, 2010) (noting that errors may be harmless if they do not prejudice the claimant).

[6] He also suggests that the ALJ should have ordered a consultative respiratory evaluation. (Doc. 13 at 6.) The medical evidence of record simply did not support claimant's allegations, and there is no reason to believe that the hiring of an additional expert at public expense would have changed the outcome. There was simply no reason for the ALJ to hire such an expert.

10

perform. (*Id.*) Additionally, he might have met listing 12.05C and D, relating to mental retardation, had his IQ scores been low enough.

An ALJ "is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable [him] to render a decision." *Ford v. Sec'y of Health and Human Servs.*, 659 F.3d 66, 69 (11th Cir. 1981); *see* 20 C.F.R. § 419.919a (detailing situations requiring a consultative examination); 20 C.F.R. § 404.1519a (same). Here, it was not. The ALJ found that a consultative exam was unnecessary because there was no allegation of a mental impairment, Tilley had been engaged in substantial gainful activity for many years despite his minimal literacy, Tilley admitted that he could read and write well enough to get by, Tilley reported in writing that he could read and understand English, and Tilley completed the seventh grade in regular education classes. (Tr. 12.) And on crossexamination, Tilley's attorney specifically asked the vocational expert whether Tilley's minimal literacy would affect the

jobs he provided, and the expert replied that it would not.⁷ (Tr. 18; tr. 432.)

Tilley disputes the ALJ's assertions, claiming that a mental impairment *was* alleged, but he does not point to any record citations showing such an allegation. (Doc. 13 at 8.) As far as the Court can tell, the only mention in the record came at the time of the hearing itself, when Tilley's attorney stated that the case hinged "on the effect of the literacy as well as the COPD." (Tr. 433.) Arguing that Tilley's *literacy* should impact the disability calculus is a far cry from asserting that Tilley cannot work because of a mental impairment. Additionally, while Tilley states in his brief that there were ample "indications of borderline intellectual functioning" in the record, he points to no such evidence supporting such an assertion. (*Id.* at 7.) At best, this is a fishing expedition.⁸ Absent some record evidence

---

⁷ Tilley's attorney asked the vocational expert whether any of the jobs listed required literacy. (Tr. 432.) The expert responded that "I really don't see where literacy, would be a, have a significant impact on them." (*Id.*)

⁸ Tilley cites to cases remanded where a plaintiff's testimony and indications by social workers and treating physicians suggested that such a disability existed. (Doc. 13 at 8.) This is not such a case. None of the medical evidence of record shows such a disability. The only evidence even remotely suggesting any mental deficiency arose from his school records, which revealed that he frequently repeated grades.

indicating that Tilley suffered from a disabling mental deficiency, the ALJ had no reason to provide a consultative examination on that score. And the ALJ adequately determined that Tilley's minimal literacy skills were adequate to those jobs for which he retained the residual functional capacity to perform.

## IV. CONCLUSION

Based on the foregoing, the Commissioner's decision denying benefits should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this  23rd  day of April, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA

---

(Tr. 118-119.) Of course, school records are insufficient to raise such an issue, standing alone. And based upon Tilley's work history and admissions at the hearing, the Court is satisfied that the ALJ had no reason to expend more time and public resources in further expanding the record.